UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 11-22-GFVT

JADEANA MICHELLE BEGLEY, PLAINTIFF,

V.   **MAGISTRATE JUDGE'S REPORT
     AND RECOMMENDATION**

MICHAEL J. ASTRUE,
Commissioner of Social Security, DEFENDANT.

## I. INTRODUCTION

Plaintiff, Jadeana Michelle Begley, brings this action under 42 U.S.C. § 405(g) to challenge the Defendant Commissioner's final decision denying Plaintiff's application for Supplemental Security Income (SSI). This matter has been referred to the undersigned for preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B). [R. 12]. Now ripe for decision on the parties' cross-motions for summary judgment, and for the reasons set forth herein, it is recommended that the Plaintiff's Motion for Summary Judgment [R. 10] be denied, the Defendant's Motion for Summary Judgment [R. 11] be granted, and that Judgment be entered affirming the final decision of the Commissioner.

## II. FACTUAL BACKGROUND & PROCEDURAL HISTORY

On September 17, 2008, the Plaintiff filed an application for SSI, alleging that she has been disabled since July 24, 2008. [Tr. 161]. In her Disability Report, Form SSA-3368, the Plaintiff claimed her work ability was limited due to weak ankles, depression, anxiety, panic attacks, asthma, and a heart murmur. [Tr. 178]. Her claim was denied initially [Tr. 94-97], and on reconsideration.

[Tr. 103-105]. After denial of her claims, she requested a hearing in front of an Administrative Law Judge ("ALJ"). On April 19, 2010, a hearing was held in front of ALJ Roger L. Reynolds. [Tr. 28-56]. The Plaintiff testified at the hearing, and was represented by counsel, Edmond Collett. [Tr. 11]. The ALJ also heard testimony from a vocational expert, Christopher Rymond. [Id.].

The Plaintiff was born December 30, 1975 and was 34 years old on the date of the ALJ's decision. [Tr. 161]. The Plaintiff completed high school (12th grade) and reports no additional education or vocational training. [Tr. 31]. The Plaintiff is not married and does not have any children. Tragically, her fianceé passed away in January 2009, and she experienced a miscarriage in November 2009. [Tr. 32, 34]. She resides with her mother, who is a retired school teacher. [R. 32]. The Plaintiff's relevant employment experience is as a school cafeteria cook from 1997 to 2002. [Tr. 179]. She was also briefly employed as a cashier and baker at a grocery store. [Tr. 31, 179]. The Plaintiff previously filed claims for Disability Insurance Benefits and SSI in 2003 and 2006. An ALJ denied both of the Plaintiff's prior applications for benefits. [Tr. 57-73, 74-91].

ALJ Reynolds denied Plaintiff's most recent claim for benefits in a written decision dated May 27, 2010. [Tr. 11-22]. The ALJ found that the Plaintiff suffered from the severe impairments of "obesity; bronchial asthma; erosive esophagitis; gastritis; right ankle sprain, rule out chronic ligamentous laxity; right knee strain; recurrent kidney stones; major depressive disorder; and an anxiety disorder." [Tr. 13]. Despite these conditions, the ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926)." [Tr. 14]. Continuing with his evaluation, the ALJ found that the Plaintiff retained the residual functional capacity to perform a range of limited, light work, with the specific limitations

set forth in the opinion. [Tr. 19]. He also found that the Plaintiff is unable to perform any past relevant work. [Tr. 21]. Nevertheless, the ALJ opined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a))." [Tr. 21]. Based on these findings, the ALJ determined that the Plaintiff was not under a "disability" as defined by the Social Security Act. [Tr. 22]. Following the adverse decision of the ALJ, the Plaintiff properly exhausted her administrative remedies by appealing to the Social Security Appeals Council. [Tr. 6]. She alleged that the decision of the ALJ was not supported by substantial evidence of record and was contrary to law, but the Appeals Council denied her request for review. [Tr. 1-3].

On October 6, 2009, the Plaintiff initiated the present action by filing her Complaint in the United States District Court for the Eastern District of Kentucky. [R. 2]. In her Motion for Summary Judgment [R. 10], the Plaintiff sets forth multiple arguments for reversal of the ALJ's decision. The Commissioner responds that the ALJ's opinion should be affirmed, as it is supported by substantial evidence. [R. 11]. Following briefing, this matter was referred to the undersigned for preparation of a Report and Recommendation. [R. 12].

### III . STANDARD OF REVIEW

A reviewing court must uphold the findings of the ALJ if they are supported by substantial evidence. 42 U.S.C. § 405(g)(2006); see also Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981). The Sixth Circuit has held that "substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) (internal quotations and citations omitted). The scope of judicial review is limited to the record itself, and the reviewing court "may

not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993) (citations omitted).

The limited nature of substantial evidence review prevents the reviewing court from substituting its judgment for that of the ALJ. Rather, so long as substantial evidence exists, the reviewing court should affirm the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion." Longworth v. Comm'r Soc. Sec. Admin., 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations and citations omitted). Sixth Circuit precedent suggests that a finding of "no substantial evidence" would be appropriate in situations where the ALJ ignores uncontested, compelling evidence for one side, makes no express findings on witness credibility and makes a ruling based on facts with "little if any evidentiary value." Noe v. Weinberger, 512 F.2d 588 (6th Cir. 1975); see also Glass v. Sec'y of Health, Educ. & Welfare, 517 F.2d 224 (6th Cir. 1975). Additionally, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 407 (6th Cir. 2009) (citations omitted).

## IV. ANALYSIS

The Plaintiff presents three arguments on appeal:

1. The ALJ erred in evaluating the Plaintiff's testimony regarding her pain, symptoms and limitations;

2. The ALJ erred by substituting his own opinion for that of the physicians of record; and

3. The ALJ erred in framing his hypothetical question to the vocational expert.

[R. 10-1 at 3]. For the reasons discussed below, each of these arguments is without merit, and the

decision of the ALJ should therefore be affirmed.

### A. The ALJ Properly Evaluated the Claimant's Credibility

The Plaintiff first argues that, although the ALJ summarized her testimony in the decision, he failed to provide a specific rationale for rejecting this testimony as required by Social Security Ruling 96-7p. After reviewing the evidence of record and the Plaintiff's testimony, the ALJ found her allegations and testimony not to be fully credible. [Tr. 20]. Agency regulations stipulate that the ALJ is to consider all of the claimant's symptoms, including pain, but only to the extent those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). The ALJ is not required to accept a claimant's testimony regarding limitations and pain when such testimony is not supported by the record. See Gooch v. Sec'y of Health & Human Svcs., 833 F.2d 589, 592 (6th Cir. 1987). If the ALJ does reject a claimant's testimony as incredible, "he must clearly state his reasons for doing so." Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's credibility determination must be accompanied by a statement explaining the ALJ's reasons. Social Security Ruling 96-7p directs the ALJ to state "specific reasons for the finding on credibility, supported by the evidence in the case record, [which] must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statement and the reasons for that weight." SSR 96-7p, "Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements" 1996 WL 374186 at *4 (July 2, 1996).

In this case, the Plaintiff testified that she had to quit her previous jobs because of recurring ankle sprains. [Tr. 31-32]. As a result, she is required to wear ankle braces at all times, but only has

one for her left ankle. [Tr. 33]. Plaintiff also testified that she injured her foot in a slip and fall accident, and due to delays in treatment, surgery is required to repair the injury. [Tr. 39]. She claims that the pain in her ankles and foot is constant. [Tr. 45]. In addition to her foot and ankle problems, Plaintiff testified that a prior knee injury causes her right knee to stay swollen and painful all the time. [Tr. 46]. The Plaintiff also testified to having difficulty with breathing due to bronchial asthma. [Tr. 36]. She has had recurring kidney stones. [Tr. 39, 48]. Due to her physical impairments, the Plaintiff estimated that she could only walk and stand about five minutes at a time. [Tr. 45].

The Plaintiff also testified to having numerous mental impairments. As a result, she has had panic attacks on a daily basis [Tr. 41] and feels "odd" around other people. [Tr. 43]. She testified that she does not like to go out, and that if she does have to go somewhere, she will get sick the night before due to a "nervous stomach". [Tr. 42]. The Plaintiff claims to be irritable and easily frustrated. [Tr. 42]. She also stated that she has been diagnosed as borderline bipolar, and that as a result, she can "go off" on others easily. [Tr. 37]. Plaintiff testified that her biggest problem is being around other people and the anxiety and depression of dealing with everyday life. [Tr. 49].

The ALJ found that although the Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. [Tr. 20-21]. Contrary to the Plaintiff's claims, the ALJ did not summarily reject her testimony. Rather, he reviewed the evidence in the record and set forth a number of inconsistencies between the Plaintiff's subjective allegations and the medical evidence. First, the ALJ noted that the Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." [Tr. 20].

6

Specifically, the ALJ found that the record lacked appropriate tests and laboratory findings to support a finding of a severe disability. The ALJ noted that "the record reflects no actual treatment for the bulk of her allegations and as for her 'hurting all over,' this is unsupported by objective findings." [Id.]. Finally, although not mentioned in the credibility portion of the decision, the ALJ clearly considered the Plaintiff's non-compliance with treatment as a factor damaging to her testimony. [Tr. 14, 17, 18].

The reasons set forth by the ALJ for finding the Plaintiff not fully credible are supported by substantial evidence. Turning first to the Plaintiff's treatment, the record reflects that, although the Plaintiff complained of near constant knee pain and swelling, she only sought treatment for that condition on one occasion and had a follow-up MRI. [Tr. 20, 548, 692]. An x-ray of Plaintiff's knee revealed "no evidence of acute fracture or dislocation" and "normal joint space." [Tr. 692]. An MRI of Plaintiff's knee showed no acute fracture dislocation, normal mineralization, and joint space within normal limits. [Tr. 548]. With regard to her stomach problems, treatment notes state that she missed appointments and declined treatments. The Plaintiff had also been scheduled to have an EGD endoscopy performed, but was seen eating McDonald's food the night before the procedure despite being placed on a clear liquid diet. [Tr. 710-711]. The Plaintiff failed to appear for numerous other scheduled doctor appointments. [Tr. 323, 436-37, 454-55]. Finally, while Plaintiff received mental health counseling and medication following her fiancee's death, in November 2009, she informed a physician that she was not interested in psychotherapy and only wanted medication. [Tr. 15, 711].

The ALJ also found the Plaintiff not to be entirely credible because objective medical findings did not support her claims of pain and limitations. [Tr. 20]. The Plaintiff herself testified

7

that she does not use a cane or other device to assist her with walking. [Tr. 34]. The ALJ noted that two examining physicians observed that Plaintiff had normal gait and did not need an assistive device. [Tr. 14-15, 387, 692, 854]. An examining physician found her to appear "comfortable in the supine and sitting positions." [Tr. 387]. She was also able to walk on her heels and toes at the time. [Tr. 388]. X-rays of the Plaintiff's ankle and knee taken in 2009 revealed no fractures or dislocations. [Tr. 540, 548, 692].

The Plaintiff's testimony with regard to mental symptoms and limitations were likewise contradicted by the medical evidence. For example, Kevin Eggerman, M.D., a consultative examiner, believed that the Plaintiff put forth a poor effort and was evasive during a January 2004 evaluation. [Tr. 15, 251]. Another consultative examiner found in September 2005 that Plaintiff similarly put forth a poor effort during examination. [Tr. 257, 261]. The Plaintiff's claim that she could not be around other people was contradicted by her examinations, which showed that she was cooperative, pleasant, talkative, made good eye contact, and demonstrated fair judgment. [Tr. 248-252, 255, 364, 404-05, 645, 733-35].

Finally, the record reveals several instances in which the Plaintiff failed to comply with treatment directives. For example, during the hearing before the ALJ, she testified that she is supposed to wear braces on both ankles at all times, but does not have one for the right ankle and only wears the left ankle brace sometimes. [Tr. 33]. The ALJ was also clearly troubled by the fact that the Plaintiff continues to smoke cigarettes, against medical advice and despite the fact that she has been diagnosed with bronchial asthma. [Tr. 14, 17, 36].

The ALJ offered specific reasons for his decision to not fully credit the Plaintiff's testimony. "[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ."

8

Siterlet v. Sec'y of Health & Human Servs., 823 F.2d 918, 920 (6th Cir. 1987). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997); see also Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). Contrary to the Plaintiff's allegations, the ALJ's credibility assessment does not represent the unsubstantiated, conclusory findings that are prohibited by the regulations. See SSR 96-7p, 1996 WL 374186 at *4. Rather, the ALJ's credibility findings are based on a detailed analysis of the evidence and should not be second guessed by this Court on review. As discussed above, substantial evidence supports the ALJ's credibility determination, therefore that determination does not serve as a basis for disturbing the ALJ's decision.

**B.     The Weight Accorded to the Opinion of the Plaintiff's Treating Physician**

The Plaintiff next argues that the ALJ erred by substituting his own opinion for that of the Plaintiff's treating physician, Dr. Roy Varghese. In essence, Plaintiff argues that the ALJ violated the treating physician rule by failing to give controlling deference to the opinion of Dr. Varghese.

On May 6, 2010, Dr. Varghese completed a form entitled "Medical Opinion Re: Ability to do Work-Related Activities (Physical)". [Tr. 880-84]. In that opinion, Dr. Varghese opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently. She could only stand and walk for two hours, and sit for six hours, in an eight hour work-day. He further opined that she must change positions every sixty minutes, and must walk around every sixty minutes. Dr. Varghese also stated that the Plaintiff was limited to occasional twisting, bending, and climbing stairs, but could never crouch or climb ladders. He also anticipated that the Plaintiff's impairments would cause her

9

to be absent from work more than three times per month.

The ALJ, however, rejected Dr. Varghese's opinion:

On 5/06/10 Dr. Roy Varghese, at the request of counsel, completed a disabling residual functional capacity form stating that claimant's leg, back and ankle pain are such that she would be expected to be absent from work "more than three times a month." "She [illegible] work." (Exh. 24F). The Administrative Law Judge rejects this assertion, as it is inconsistent with claimant's overall medical evidence of record.

[Tr. 15]. Under the treating physician rule, the ALJ "will" give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)). Furthermore, the ALJ has a duty to always give good reasons in the decision for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Cole v. Astrue, – F.3d –, 2011 WL 2745792, *4 (6th Cir. July 15, 2011) (quoting SSR 96-2p, "Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions" 1996 WL 374188 at *5 (July 2, 1996)).

In this case, the ALJ gave no weight to Dr. Varghese's opinion because it was inconsistent

with the overall medical evidence of record. [Tr. 15]. The Sixth Circuit "has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993). Here, Dr. Varghese's opinion was apparently supported by no clinical findings. Dr. Varghese did not accompany his opinion with the results of a physical examination, nor did he provide a medical explanation for the limitations he identified. See 20 C.F.R. § 416.927(d)(3) (stating that more weight should be given to opinions with supporting explanation). When asked specifically what medical findings support the limitations he found, Dr. Varghese only responded that Plaintiff "has leg pain and ankle pain." [Tr. 883].

"It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96-2p, 1996 WL 374188 at *2. The ALJ found that Dr. Varghese's opinions regarding the Plaintiff's impairments were not supported by objective medical evidence and conflicted with the other evidence of record, therefore, he properly rejected Dr. Varghese's opinion. Although the ALJ did not specifically address all of the factors listed in 20 C.F.R. § 404.1527(d), he nevertheless provided support for his decision to reject Dr. Varghese's opinion. The ALJ, therefore, complied with the purposes of the "good reasons" requirement, and the failure to individually address all the factors is harmless. See Nelson v. Comm'r of Soc. Sec., 195 Fed. Appx. 462, 469 - 70 (6th Cir. 2006); see also Friend v. Comm'r of Soc. Sec., 375 Fed. Appx. 543, 551 (6th Cir. 2010) (a violation of the good reasons rule is harmless error if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it or the Commissioner has met the goal of § 1527(d)(2)

even though he has not complied with the terms of the regulation).

### C. ALJ's Hypothetical Question to the Vocational Expert

After determining the Plaintiff's Residual Functional Capacity ("RFC"), the ALJ found that Plaintiff could not return to her past relevant work. [Tr. 21]. "Once the ALJ determines that a claimant does not have the RFC to perform her past relevant work, the burden shifts to the Commissioner to show that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy." Pasco v. Comm'r of Soc. Sec., 137 Fed. Appx. 828, 845 (6th Cir. 2005) (citations omitted). If the Commissioner seeks to rely on a vocational expert to prove the existence of a substantial number of jobs that Plaintiff can perform, the testimony must be given in response to a hypothetical question that accurately describes the Plaintiff. See 20 C.F.R. § 416.966(e). In order for the vocational expert's answer to constitute substantial evidence, the hypothetical posed must accurately portray the Plaintiff's physical and mental impairments. Varley v. Sec'y of Health and Human Svcs., 820 F.2d 777, 779 (6th Cir. 1987). The ALJ is not required to include limitations he does not find credible. Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993)

In this case, Plaintiff argues that the hypothetical posed by the ALJ failed to accurately portray the severity of Plaintiff's mental disorder. [R. 10-1 at 6]. The transcript of the hearing, however, reveals that the ALJ included several mental limitations in his hypothetical. Specifically, the ALJ asked the vocational expert to assume a hypothetical individual who could perform only entry level work with simple, repetitive procedures and no frequent changes in work routines. [Tr. 52-53]. He further asked the expert to limit the hypothetical person's work to an object oriented environment with only occasional, casual contact with the general public. [Tr. 53].

The Plaintiff argues that this hypothetical does not accurately portray the severity of her mental disorder, but she has failed to identify any additional limitations that should have been included. Nor has she cited to any evidence showing that her mental limitations were more severe than those found by the ALJ. Because Plaintiff has failed to develop her argument, the Court cannot conduct an accurate review of the ALJ's decision. As the Commissioner notes, failure to develop an issue on appeal is grounds for denial. See McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); Dunn v. Astrue, No. 5:10-312-DCR, 2011 WL 1630287, *3 (E.D. Ky. Apr. 19, 2011). In any event, the mental limitations posed by the ALJ in his hypothetical were supported by substantial evidence. As previously noted, examinations of the Plaintiff showed that she was cooperative, pleasant, talkative, made good eye contact, and demonstrated fair judgment. [Tr. 248-252, 255, 364, 404-05, 645, 733-35]. The hypothetical posed by the ALJ accurately reflected Plaintiff's mental limitations.

## V. CONCLUSION

For the foregoing reasons, it is RECOMMENDED that the Plaintiff's Motion for Summary Judgment [R. 10] be DENIED, the Defendant Commissioner's Motion for Summary Judgment [R. 11] be GRANTED, and that Judgment be entered affirming the final decision of the Commissioner.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir.

2004); <u>Miller v. Currie</u>, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed August 26, 2011.

Signed By:
*Edward B. Atkins* EBA
United States Magistrate Judge